# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re

Case No. _____
   Amended

**Notice of Preliminary Hearing on Motion
[*Check One*]**

   **For Use of Cash Collateral**

Debtor

   **To Obtain Credit**

YOU ARE NOTIFIED THAT:

1. The undersigned moving party, _____,
   filed a motion [*check one*]

      for use of cash collateral.

      to obtain credit.

   The motion is attached and it includes (1) the statement required by
   Local Bankruptcy Form (LBF) 541.5, Procedures re: Motions for Use of Cash
   Collateral or to Obtain Credit and (2) the following allegations:

   a. The immediate and irreparable harm that will come to the estate pending a final
      hearing is:

   b. The amount of [*check one*]   cash collateral   credit necessary to avoid the harm
      detailed above prior to the final hearing is         .

2. The name and service address of the moving party's attorney (or moving party, if no
   attorney) are:

3. An evidentiary hearing on the motion, at which witnesses may testify, will be held as
   follows:

**541.1 (12/1/2022)**        Page 1 of 2

**Date:**_____  **Time:** _____

**Location**:    Courtroom #_____, _____

Telephone Hearing [*See LBF 888, Telephone Hearing Requirements.*]

   **Call In Number:** (888) 684-8852

   **Access Code:**      5870400 for Judge David W. Hercher (dwh)

                         1238244 for Judge Peter C. McKittrick (pcm)

                         4950985 for Judge Teresa H. Pearson (thp)

                         3388495 for Judge Thomas M. Renn (tmr)

   Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

4.  If you wish to object to the motion, you must attend the preliminary hearing, file a written response, which states the facts upon which you will rely, with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401, or both attend the hearing and file a written response.

    If the response is filed within three business days before the hearing, notify the judge's chambers by telephone immediately after filing the document, as required by Local Bankruptcy Rule 9004-1(b).

5.  I certify that on _____ this notice and the motion were served pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 7004 on the debtor(s), any debtor's attorney, any trustee, any trustee's attorney, members of any committee appointed under 11 U.S.C. § 1102 or elected pursuant to 11 U.S.C. § 705 or its authorized agent (or, if no committee in a chapter 11 case, on all creditors listed on the list filed pursuant to FRBP 1007(d)), any creditors' committee attorney, the U.S. trustee, and all entities with any interest in the cash collateral subject to this motion, whose names and addresses used for service are as follows:

_____

Signature of Moving Party or Attorney                                OSB #

_____

(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#(s)

**541.1 (12/1/2022)**          Page 2 of 2

Theodore J Piteo, OSB 090311
Michael D. O'Brien, OSB 951056
Michael D. O'Brien & Associates, P.C.
12909 SW 68th Pkwy, Suite 160
Portland, OR 97223
503-786-3800

Of Attorneys for 72nd Avenue Property, LLC, Debtor-in-possession.


IN THE BANKRUPTCY COURT OF THE UNITED STATES
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re: | ) | Case No. 24-31211-pcm11 |
| | ) | |
| 72nd Avenue Property, LLC | ) | MOTION FOR AUTHORITY TO USE |
| | ) | CASH COLLATERAL AND AUTHORITY |
| | ) | TO GRANT REPLACEMENT LIEN |
| Debtor-in-possession. | ) | |

72nd Avenue Property, LLC, Debtor-in-possession, ("Debtor") moves the Court for an order granting preliminary and final authority to use cash collateral and for authority to grant a replacement lien and represents as follows as supported by the concurrently filed declaration of Debtor's Member, Richard Cassinelli:

1.      None of the prohibited provisions listed in LBF 541.5 are included in this Motion or the proposed Order.

2.      On April 30, 2024, Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code for the District of Oregon. At the time of filing, the Debtor was

being operated by a court appointed receiver pursuant to Multnomah County Court Case No. 23CV46660. Upon the filing of this case, Debtor expects its operations to be turned over to Debtor's Member to continue post filing operations pursuant to 11 U.S.C. 543(b). Going forward from that turnover Debtor expects to maintain possession of its property and operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the United States Bankruptcy Code ("the Code.")

3.      Prior to the commencement of this case, Debtor entered into a Note and Deed of Trust arrangement with its senior secured creditor, Avatar Portland Commercial, LLC ("Avatar"). That obligation included a security against the rents of Debtor's operation, in addition to a lien on the Debtor's real property and related furniture, fixtures, and equipment (the "Pre-Petition Collateral"). A true and correct copy of that Deed of Trust is attached here as Exhibit A. Avatar subsequently partially assigned its interest in the Deed of Trust and Pre-Petition Collateral to American Life & Security Corp. on or about February 17, 2023.

4.      Debtor also entered into a Note and Deed of Trust arrangement with Parkview Financial REIT, LP & Parkview Financial Fund 2020, LP (collectively "Parkview") and pledged the Pre-Petition Collateral as security. A true and correct copy of that Deed of Trust is attached here as Exhibit B. Parkview's security interest is junior to Avatar.

5.      The security interest of Avatar is superior to those of all other creditors known to Debtor.

6.      In order to maintain Debtor's operations and protect its ability to reorganize in accordance with chapter 11 of the Code, it is necessary that Debtor obtain the authority provided in 11 USC §363(c)(2)(B) to use cash collateral related to the Pre-Petition Collateral.

7.      Debtor requests that this Court authorize its preliminary use of cash collateral for the payment of operating expenses in the normal course of business, as set forth in the itemized

budget attached hereto as Exhibit C. The preliminary use of cash collateral requested in Exhibit C would cover projected monthly operating expenses. Exhibit C itemizes the normal monthly expenses as well as a 14-day period prior to a final hearing on cash collateral. Debtor requests this Court allow use of cash collateral for a 14-day period pending a final hearing on its motion to use cash collateral, during which time Debtor hopes to negotiate a stipulated order for the use of cash collateral with Avatar. Debtor currently has no alternative borrowing source from which it could secure additional funding to operate its business.

8.      In order to adequately protect the interests of Creditor in the Pre-petition Collateral and for Debtor's use of cash collateral as requested in this motion, Debtor proposes to provide replacement liens pursuant to 11 USC §361(2) to property of the Estate of the kind which presently secure the indebtedness owed to Creditors (the "Post-petition Collateral."). Debtor also proposes to make a $5,000 monthly payment to Avatar for adequate protection, which amount is included in the Exhibit C budget.

9.      In the event that the court were to refuse authorization of Debtor's use of cash collateral, Debtor believes it will be unable to maintain current operations and successfully confirm a plan of reorganization. Without the use of cash collateral, Debtor will be forced to liquidate its collateral for below market value resulting in significant, irreparable harm to Debtor's estate and creditors, especially its unsecured creditors.


WHERFORE, Debtor requests that this Court enter a) An Order pursuant to 11 USC §363(c)(2)(B) authorizing Debtor to use cash collateral for its general ongoing operations as described in this motion and the 14-day budget attached hereto in Exhibit C in the amount of

$6,501, and to grant unto Creditor a replacement liens in the Post-petition Collateral effective as of April 30, 2024, and for such other and further relief as the Court may deem just and proper.

DATED this __30th__ day of April, 2024.

Respectfully So Moved by:

___/s/ Theodore J. Piteo_____

Michael D. O'Brien, OSB 95105
Theodore J. Piteo, OSB 090311
of Attorneys for Debtor-in-Possession*
*Pending Approval of Employment

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | Case No. 24-31211-pcm11 |
|---|---|
| In re: | |
| 72nd Avenue Property, LLC | DECLARATION OF RICHARD CASSINELLI, MEMBER, IN SUPPORT MOTION FOR AUTHORITY TO USE CASH COLLATERAL |
| Debtor(s) | Hearing Scheduled |

## <u>DECLARATION</u>

I, Richard Cassinelli, declare the following under penalty of perjury:

1. I am over the age of 18 and have personal knowledge of the facts I am testifying to in this declaration.

2. I am a Member of the Debtor in the above-captioned matter and, prior to the assignment of a receiver in 2023, participated in the general day-to-day operations of the Debtor's business.

3. 72nd Avenue Property, LLC is an ongoing business that manages the residential and commercial rentals in a mixed use building located at 11740 SW 72nd Ave, Tigard, OR 97223 (the "Property"). All of the Properties operations were performed by myself and by sub-contractors hired to address the various needs of the business such as repairs, landscaping, and maintenance. I also advertised the units, interviewed potential tenants, collected rents, and performed other property management duties on the Property. During the pendency of the Debtor's filing, I will be performing those roles.

4. The use of Cash Collateral is a necessity to pay ongoing monthly expenses such as common utilities, including water, trash, power and internet service, repair minor

property concerns and maintain the properties landscaping and to otherwise maintain the operation and condition of the Property. The Debtor also needs funds to make its ongoing insurance payments to protect the Estate's collateral. Finally, due to the neglect of the receiver, the Debtor and I will need to undertake an extensive advertising and marketing campaign to return the building to target occupancy. The budget attached to this motion as Exhibit C is an estimation of the funds needed to maintain operations so that we can confirm a Plan of Reorganization.

5. The Debtor does not currently have an alternative source of funds to help it operate without utilizing the cash collateral of Avatar.

6. The ongoing operation of the business is necessary for repayment of creditors and successful performance of a Plan of reorganization. If we cannot use funds and continue operations, we will be unable to utilize the protections afforded us by the Bankruptcy Code to restructure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 30, 2024

/s/ Richard Cassinelli _____
Richard Cassinelli

Label Matrix for local noticing
0979-3
Case 24-31211-pcm11
District of Oregon
Portland
Tue Apr 30 14:33:33 PDT 2024

72nd Avenue Property, LLC
4804 NW Bethany Blvd
Suite I-2
Portland, OR 97229-9195

1050 SW 6th Ave. #700
Portland, OR 97204-1160

American Life and Security Corp
c/o President Mike Minnich
2900 S 70th Street
Unit 400
Lincoln, NE 68506-3746

Apartments, LLC
1331 L Street, NW
Washington, DC 20005-4293

Attorney Julia Manela
1203 Willamette
Suite 200
Eugene, OR 97401-5479

Avatar Portland Commercial, LLC
c/o Manager TR Hazelrigg IV
1200 Westlake Avenue N, Suite 1006
Seattle, WA 98109-3529

Capifi Funding
3323 NE 163rd Street
Suite 401
North Miami Beach, FL 33160-5596

Capifi Funding
c/o GMFunding and agent Vladimir Joseph
150 Trumbull St.
3rd Fl
Hartford, CT 06103-2447

City of Tigard
Utility Billing
13125 SW Hall Blvd
Tigard, OR 97223-8167

Cobalt Properties Group
Crickett Bittner
Portland Portfolio Manager
376 SW Bluff Drive, Suite 8
Bend, OR 97702-1399

Cobalt Properties Management Group, Inc.
c/o Gene D. Buccola
333 SW Upper Terrace Drive
Bend, OR 97702-1377

Commercial Center
519 SW Park Avenue, Suite 217
Portland, OR 97205-3203

Corporation Service Company
PO Box 2576
Springfield, IL 62708-2576

Corporation Service Company
RA for Parkview Financial REIT, LP
251 Little Falls Dr
Wilmington, DE 19808-1674

Craig G. Russillo, Attorney
Schwabe, Williamson & Wyatt, PC
1211 SW 5th Ave., Suite 1900
Portland, OR 97204-3719

Delta Fire
14795 SW 72nd Ave
Portland, OR 97224-7910

Dunn Carney
851 SW 6th Avenue, Suite 1500
Portland, OR 97204-1357

Ellen F. Rosenblum, Attorney General
100 Justice Building
1162 Court St. NE
Salem, OR 97301-4095

Hill Architects, P.C.
c/o President Lloyd Hill
1750 Blankenship Road, Suite 400
West Linn, OR 97068-5102

I.C. Systems, Inc
PO Box 64378
444 Hwy 96 East
Saint Paul, MN 55127-2557

Internal Revenue Service
Bankruptcy Notices
PO Box 7346
Philadelphia, PA 19101-7346

Jack's Overhead Door, Inc.
PO Box 230368
Tigard, OR 97281-0368

Juan C. Zorrilla, Esq - Registered Agent
1395 Brickell Ave
14th Fl
Miami, FL 33131-3371

McEwen Gisvold, LLP
1100 SW 6th Ave., #1600
Portland, OR 97204-1081

Oregon Department Of Revenue
Bankruptcy Notice Dept.
955 Center Street, NE
Salem, OR 97301-2553

PGE
7895 SW Mohawk Street
Tualatin, OR 97062-9192

Pacwest Funding, Inc
c/o President Kevin Simrin
4710 VILLAGE PLAZA LOOP
STE 100
Eugene, OR 97401-6682

Parkview Financial REIT LP
11440 San Vicente Blvd, 2nd Floor
Los Angeles, CA 90049-6217

Precision Capital
c/o RA Kevin Simrin
4710 Village Plaza Loop, Suite 100
Eugene, OR 97401-6682

Schindler Elevator Corporation
13122 Northeast David Circle, #400
Portland, OR 97230-1140

The Corporation Trust Company
RA for Avatar Portland Commerical, LLC
1209 Orange St
Wilmington, DE 19801-1120

(p)TUALATIN VALLEY WATER DISTRICT
ATTN LEE LAWSON
1850 SW 170TH AVE
BEAVERTON OR 97003-4211


US Attorney General
Attn: Merrick Garland
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

US Attorney Oregon
c/o Civil Process Clerk
1000 SW Third Ave
Suite 600
Portland, OR 97204-2936

US Trustee, Portland
1220 SW 3rd Ave., Rm. 315
Portland, OR 97204-2829


United First, LLC
2999 NE 191st Street
Unit 901
Miami, FL 33180-4926

United First, LLC
c/o Manager Boris Musheyev
29999 NE 191st Street
Unit 901
Miami, FL 33180

(p)WAVE
3700 MONTE VILLA PARKWAY
BOTHELL WA 98021-9126


THEODORE J PITEO
Michael D. O'Brien & Associates
12909 SW 68th Pkwy
Suite 160
Portland, OR 97223-8399



The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Tualatin Valley Water District
Bankruptcy Notices
1850 SW 170th Avenue
Beaverton, OR 97003-4211

Wave Broadband
Attn: Business Solutions RE Bankruptcy
3700 Monte Villa Parkway
Bothell, WA 98021



The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Misc Parties Rental Leases

End of Label Matrix
Mailable recipients     39
Bypassed recipients      1
Total                   40

| Washington County, Oregon **2023-006339** |
| D-M |
| Stn=8 J CHOATE **02/17/2023 12:05:24 PM** |
| $145.00 $20.00 $11.00 $5.00 $60.00 **$241.00** |

I, Joe Nelson, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Joe Nelson, Director of Assessment and Taxation, Ex-Officio County Clerk

**RECORDING REQUESTED BY:**

*Chicago Title*

_____

_____

**AND WHEN RECORDED RETURN TO:**
Harrison Coleman
Coleman Talley LLP
3344 Peachtree Road NE, Suite 1950
Atlanta, Georgia 30326

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

## (OREGON)

**This Instrument is a "Trust Deed" as that term is used in ORS 86.705-815 and other applicable provisions of Oregon law.**

**Statutory Notice:**

**A.     The address of the entity holding a lien or other interest created by this Security Instrument is:**

**AVATAR PORTLAND COMMERCIAL LLC**
1200 Westlake Avenue N, #1006
Seattle, Washington 98109

**B.     The tax account number(s) of the Land subject to the lien or in which the interest is created: R2214013**

**BORROWER:**     **72nd AVENUE PROPERTY LLC,**
an Oregon limited liability company
4804 NW Bethany Boulevard, Suite I-2, Portland, OR 97229

**LENDER:**     **AVATAR PORTLAND COMMERCIAL LLC,**
a Delaware limited liability company
1200 Westlake Avenue N, #1006, Seattle, WA 98109

**LEGAL DESCRIPTION:**     Parcel 1, PARTITION PLAT NO. 2020-006, in the City of Tigard, County of Washington, and State of Oregon.

*Chicago Title ⊛ 4725200076677-SD comm*

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**THIS DEED OF TRUST AND SECURITY AGREEMENT** (this "**Security Instrument**") is made effective as of this 17 day of February, 2023, by 72ⁿᵈ **AVENUE PROPERTY LLC**, an Oregon limited liability company, with a principal place of business at 4804 NW Bethany Boulevard, Portland, OR 97229, as grantor ("**Borrower**") to **CHICAGO TITLE OF OREGON**, having an address at 1211 SW Fifth Avenue, Suite 2130, Portland, OR 97204, as trustee ("**Trustee**"), for the benefit of **AVATAR PORTLAND COMMERCIAL LLC**, a Delaware limited liability company, having an address at 1200 Westlake Avenue N, #1006, Seattle, WA 98109, as beneficiary ("**Lender**").

## W I T N E S S E T H:

**WHEREAS**, this Security Instrument is given to secure a loan (the "**Loan**") in the principal sum of **ELEVEN MILLION TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($11,250,000.00)** pursuant to that certain Loan Agreement dated as of the date hereof among Borrower, Guarantor (as defined therein) and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by that certain Commercial Promissory Note dated the date hereof made by Borrower to Lender (such Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred to as the "**Note**");

**WHEREAS**, Borrower desires to secure the payment of the Debt and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents; and

**WHEREAS**, this Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument.

**NOW THEREFORE,** in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument:

## ARTICLE 1 - GRANTS OF SECURITY

**Section 1.1** **Property Conveyed**. Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey and grant a security interest to Trustee and its successors and assigns, in trust, with Power of Sale for the benefit of Lender as beneficiary in trust, the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

(a) _Land_. The real property described in Exhibit A attached hereto and made a part hereof (the "**Land**");

(b)     Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land or for any other use and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument regardless of the ownership thereof (the "**Additional Land**");

(c)     Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land or the Additional Land (collectively, the "**Improvements**");

(d)     Easements and Other Beneficial Interests.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land, the Additional Land, and the Improvements, and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land or the Additional Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment.  All equipment as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or the Additional Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**").  Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under leases except to the extent that Borrower shall have any right or interest therein;

(f)     Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land or the Additional Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land or the Additional Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary

sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, Fixtures shall not include any property which tenants are entitled to remove pursuant to leases except to the extent that Borrower shall have any right or interest therein;

(g)     Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code as hereinafter defined), other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)     Leases and Rents.  All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") (collectively, the "**Leases**") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, any lease guaranties, letters of credit, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, fees payable under the Leases (including, without limitation, any fees or other amounts payable in connection with termination or cancellation of any Lease with respect to all or a portion of the space demised thereunder), issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(i)     Condemnation Awards.  All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)     Insurance Proceeds.  All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)     <u>Tax Certiorari</u>. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(l)     <u>Rights</u>. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(m)     <u>Agreements</u>. All agreements, contracts, certificates, instruments, letters of credit, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(n)     <u>Trademarks</u>. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)     <u>Proceeds</u>. All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise; and

(p)     <u>Other Rights</u>. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (o) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender and Trustee, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and conveyed hereby.

**Section 1.2**     **Assignment of Leases and Rents.**     Borrower hereby absolutely and unconditionally assigns to Lender and Trustee all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of <u>Section 7.1(h)</u> of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

**Section 1.3    Security Agreement**.  This Security Instrument is both a real property deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.  The principal place of business of Borrower (Debtor) is as set forth on page one hereof and the address of Lender (Secured Party) is as set forth on page one hereof.

**Section 1.4    Fixture Filing**.  Certain of the Property is or will become fixtures (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Security Instrument, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement naming Borrower as the Debtor and Lender as the Secured Party filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

**Section 1.5    Pledges of Monies Held**.  Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument.

**Section 1.6    Purpose of Loan**.  The loan secured hereby is made, and all proceeds thereof will be used solely for commercial, investment, or business purposes and not for personal, household, or family purposes.  This Security Instrument is not a residential trust

Exhibit A - Pg. Page 6 of 29    Case 24-31211-pcm11    Doc 11    Filed 04/30/24

deed, the Property is not residential real property, and the loan secured hereby is not a residential mortgage transaction, each as defined in ORS Chapters 86 and 86A. The Borrower is not a resident of the Property. So long as any of the debt secured hereby is unpaid, Borrower covenants and agrees that the property shall remain non-residential property.

## CONDITIONS TO GRANT

**TO HAVE AND TO HOLD** the above granted and described Property unto and to the use and benefit of Lender and Trustee, and for their successors and assigns, forever;

**IN TRUST, WITH POWER OF SALE**, to secure payment to Lender of the Debt at the time and in the manner provided for its payment in the Note, the Loan Agreement, and in this Security Instrument.

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument, shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE 2 - DEBT AND OBLIGATIONS SECURED

**Section 2.1      Debt**. This Security Instrument and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Debt which by its definition (as set forth in Loan Agreement) includes, but is not limited to, the obligations of Borrower to pay to Lender the principal and interest owing pursuant to the terms and conditions of the Note.

**Section 2.2      Other Obligations**.    This Security Instrument and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)      the performance of all other obligations of Borrower contained herein;

(b)      the performance of each obligation of Borrower contained in the Loan Agreement and any other Loan Document; and

(c)      the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.3      Debt and Other Obligations**.    Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

## ARTICLE 3 - BORROWER COVENANTS

Borrower covenants and agrees that:

**Section 3.1** **Payment of Debt**. Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 3.2** **Incorporation by Reference**. All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 3.3** **Insurance**. Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 3.4** **Maintenance of Property**. Borrower shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty, or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

**Section 3.5** **Waste**. Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

**Section 3.6** **Payment for Labor and Materials**.

(a) Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("Labor and Material Costs") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances. As used herein, the term "Permitted Encumbrances" means: (i) the liens created by the Loan Documents, (ii) all liens and other matters disclosed in the final ALTA loan title insurance policy issued to Lender with respect to the Property, (iii) liens, if any, for taxes not yet due and payable and not delinquent, (iv) any

workers', mechanics' or other similar liens on the Property provided that any such lien is bonded or discharged within thirty (30) days after Borrower first receives notice of such lien, (v) such other title and survey exceptions as Lender approves in writing in Lender's discretion, and (vi) the Leases.

(b)     After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

**Section 3.7     Performance of Other Agreements**.     Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

**Section 3.8     Change of Name, Identity or Structure**.     Borrower shall not change Borrower's name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership or other structure without first (a) notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change, (b) taking all action required by Lender for the purpose of perfecting or protecting the lien and security interest of Lender and (c) in the case of a change in Borrower's structure, without first obtaining the prior written consent of Lender. Borrower shall promptly notify Lender in writing of any change in its organizational identification number. If Borrower does not now have an organizational identification number and later obtains one, Borrower shall promptly notify Lender in writing of such organizational identification number. Borrower shall execute and deliver to Lender, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interest granted herein. At the request of Lender, Borrower shall execute a certificate in form satisfactory to Lender listing the trade names under which Borrower intends to operate the Property, and representing and warranting that Borrower does business under no other trade name with respect to the Property.

## ARTICLE 4 - OBLIGATIONS AND RELIANCES

**Section 4.1    Relationship of Borrower and Lender**.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**Section 4.2    No Reliance on Lender**.  The general partners, officers, shareholders, members, principals and/or other beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

**Section 4.3    No Lender Obligations.**

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (m) or Section 1.2, Lender is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.4    Reliance**.  Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Article IV of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Article IV of the Loan Agreement.

## ARTICLE 5 - FURTHER ASSURANCES

**Section 5.1    Recording of Security Instrument, Etc**.  Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be

required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 5.2     **Further Acts, Etc**. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Governmental Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) with or without the signature of Borrower as authorized by applicable law, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation such rights and remedies available to Lender pursuant to this Section 5.2. To the extent not prohibited by applicable law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

Section 5.3     **Changes in Tax, Debt, Credit and Documentary Stamp Laws.**

(a)     If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury then Lender shall have the

option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b)     Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**Section 5.4     Replacement Documents**.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE 6 - DUE ON SALE/ENCUMBRANCE

**Section 6.1     Lender Reliance**.  Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2     No Transfer** .  Borrower shall not permit or suffer any Transfer to occur unless Lender shall consent thereto in writing.

**Section 6.3     Transfer Defined**.  As used herein Transfer shall have the meaning ascribed to it in the Loan Agreement.

**Section 6.4     Lender's Rights**.  Without obligating Lender to grant any consent under Section 6.2 hereof which Lender may grant or withhold in its sole discretion, Lender reserves the right to condition the consent required hereunder upon (a) a modification of the terms hereof and of the Loan Agreement, the Note or the other Loan Documents; (b) an assumption of the Loan Agreement, the Note, this Security Instrument and the other Loan Documents as so modified by the proposed transferee, subject to the provisions of the Loan

4854-0238-9070, v. 3

Agreement; (c) payment of all of Lender's expenses incurred in connection with such transfer; (d) the proposed transferee's ability to satisfy Lender's then-current underwriting standards; or (e) such other conditions as Lender shall determine in its reasonable discretion to be in the interest of Lender, including, without limitation, the creditworthiness, reputation and qualifications of the transferee with respect to the Loan and the Property. Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Transfer without Lender's consent. This provision shall apply to every Transfer regardless of whether voluntary or not, or whether or not Lender has consented to any previous Transfer.

## ARTICLE 7 - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1** **Remedies**. Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender or Trustee, or both, may, take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender or Trustee may determine, in their sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender or Trustee:

    (a)    declare the entire unpaid Debt to be immediately due and payable;

    (b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

    (c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

    (d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; and, without limiting the foregoing:

    (i)    In connection with any sale or sales hereunder, Lender or the Trustee shall be entitled to elect to treat any of the Property which consists of a right in action or which is property that can be severed from the Real Property covered hereby or any improvements without causing structural damage thereto as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of Real Property. Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender

and/or the Trustee shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)     Lender and/or the Trustee shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender and/or the Trustee so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender and/or the Trustee and Trustee is hereby authorized and empowered to conduct any such sale of any Real Property, Personal Property, Equipment and Fixtures in accordance with the procedures applicable to Real Property;

(iii)    Should Lender and/or the Trustee elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that the Lender and/or the Trustee has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of Real Property, Lender and/or the Trustee shall give such notice of Event of Default, if any, and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, and without the necessity of any demand on Borrower, Lender and/or the Trustee at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States. Lender or the Trustee may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed therefor;

(iv)     If the Property consists of several lots, parcels or items of property, Lender or the Trustee shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender or the Trustee designates. Any Person, other than the Trustee, including Borrower or Lender, may purchase at any sale hereunder. Should Lender or the Trustee desire that more than one sale or other disposition of the Property be conducted, Lender or the Trustee shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender or the Trustee may designate, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not sold until all the Debt has been paid in full. In the event Lender or the Trustee elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(e)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)     apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor, indemnitor with respect to the Loan or of any Person, liable for the payment of the Debt;

(h)     the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and the Personal Property, or any part thereof, and to take such other measures as Lender or Trustee or Trustee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender or Trustee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)     apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any

other Loan Document to the payment of the following items in any order in its uncontrolled discretion:

    (i)      Taxes and other charges;

    (ii)     Insurance premiums;

    (iii)    Interest on the unpaid principal balance of the Note;

    (iv)    Amortization of the unpaid principal balance of the Note;

    (v)     All other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Security Instrument;

    (k)    pursue such other remedies as Lender may have under applicable law; or

    (l)    apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

        **Section 7.2**    **Application of Proceeds**.  The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper, to the extent consistent with law.

        **Section 7.3**    **Right to Cure Defaults**.  Upon the occurrence and during the continuance of any Event of Default, Lender may remedy such Event of Default in such manner and to such extent as Lender may deem necessary to protect the security hereof, but without any obligation to do so and without notice to or demand on Borrower, and without releasing Borrower from any obligation hereunder, Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this <u>Section 7.3</u>, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand.  All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender.  All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.4 **Actions and Proceedings**. Lender or Trustee has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

Section 7.5 **Recovery of Sums Required to be Paid**. Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender or Trustee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

Section 7.6 **Examination of Books and Records**. At reasonable times and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Borrower which reflect upon its financial condition, at the Property or at any office regularly maintained by Borrower where the books and records are located. Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers. In addition, at reasonable times and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Borrower pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Borrower where the books and records are located. This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

### Section 7.7 **Other Rights, Etc.**

(a) The failure of Lender or Trustee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender or Trustee to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender or Trustee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b) It is agreed that the risk of loss or damage to the Property is on Borrower, and neither Lender nor Trustee shall have any liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender or Trustee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Lender's or Trustee's possession.

(c) Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender or Trustee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without

Deed of Trust                                                17

prejudice to the right of Lender or Trustee thereafter to foreclose this Security Instrument. The rights of Lender or Trustee under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender or Trustee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Neither Lender nor Trustee shall be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

          **Section 7.8**     **Right to Release Any Portion of the Property**. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

          **Section 7.9**     **Violation of Governmental Requirements.** If the Property is not in material compliance with Governmental Requirements (as defined in the Loan Agreement), Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

          **Section 7.10**     **Recourse and Choice of Remedies**. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, Lender and other Indemnified Parties (as hereinafter defined) are entitled to enforce the obligations of Borrower, any guarantor and indemnitor contained in Sections 8.2 and 8.3 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure, exercise of a power of sale or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property, or otherwise causes Trustee to exercise the power of sale pursuant to this Security Instrument. Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower and any guarantor or indemnitor with respect to the Loan. The provisions of Sections 8.2 and 8.3 herein are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Security Instrument or the other Loan Documents, and Borrower and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations pursuant to Sections 8.2 and 8.3. The liability of Borrower and any guarantor or indemnitor with respect to the Loan pursuant to Sections 8.2 and 8.3 herein is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender or Trustee from foreclosing or exercising a power of sale pursuant to this Security Instrument or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to Sections 8.2 and 8.3 herein, whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or

actions initiated in connection with any matter addressed in the **"Environmental Indemnity Agreement"**, as that term is defined in the Loan Agreement.

Section 7.11 **Right of Entry**. Upon reasonable notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

## ARTICLE 8 - INDEMNIFICATION

Section 8.1 **General Indemnification**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense) (collectively, the **"Losses"**) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following, except to the extent arising out of the gross negligence or willful misconduct of any Indemnified Party: (a) ownership of this Security Instrument, the Property or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Debt, and the Note, the Loan Agreement, this Security Instrument, or any other Loan Documents; (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Security Instrument or the Loan Agreement or the Note or any of the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Borrower, any guarantor or indemnitor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (f) any failure on the part of Borrower to perform or be in compliance with any of the terms of this Security Instrument; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Security Instrument, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Security Instrument is made; (i) any failure of the Property to be in compliance with any Governmental Requirements; (j) the enforcement by any Indemnified Party of the provisions of this Article 9; (k) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (1) the payment of any commission, charge or brokerage fee to anyone claiming through Borrower which may be payable in connection with the funding of the Loan; or (m) any misrepresentation made by Borrower in this Security Instrument or any other Loan Document. Any amounts payable to Lender by reason of the application of this Section 8.1 shall become immediately due

and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid. For purposes of this Article 9, the term "**Indemnified Parties**" means Lender and any Person who is or will have been involved in the origination of the Loan, any Person who is or will have been involved in the servicing of the Loan secured hereby, any Person in whose name the encumbrance created by this Security Instrument is or will have been recorded, persons and entities who may hold or acquire or will have held a full or partial interest in the Loan secured hereby (including, but not limited to, investors or prospective investors in the Debt, as well as custodians, trustees and other fiduciaries who hold or have held a full or partial interest in the Loan secured hereby for the benefit of third parties) as well as the respective directors, officers, shareholders, partners, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including but not limited to any other Person who holds or acquires or will have held a participation or other full or partial interest in the Loan, whether during the term of the Loan or as a part of or following a foreclosure of the Loan and including, but not limited to, any successors by merger, consolidation or acquisition of all or a substantial portion of Lender's assets and business).

Section 8.2 **Mortgage and/or Intangible Tax**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

Section 8.3 **ERISA Indemnification**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion) that Lender may incur, directly or indirectly, as a result of a default under Section 5.19 of the Loan Agreement.

Section 8.4 **Intentionally Omitted**

Section 8.5 **Duty to Defend; Attorneys' Fees and Other Fees and Expenses**. Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Borrower and any Indemnified Party and Borrower and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Borrower, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Borrower's consent, which consent shall not be unreasonably withheld. Upon demand, Borrower shall pay or, in the sole and absolute discretion of the Indemnified

Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith. In connection with any action arising from or in connection with this Security Instrument, the prevailing party shall be entitled to an award of any of its expenses, including reasonable attorneys' fees and costs.

## ARTICLE 9 - WAIVERS

**Section 9.1** **Waiver of Counterclaim**. To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

**Section 9.2** **Marshalling and Other Matters**. To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by applicable law.

**Section 9.3** **Waiver of Notice**. To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except with respect to matters for which this Security Instrument or the Loan Documents specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower and except with respect to matters for which Lender or Trustee is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

**Section 9.4** **Waiver of Statute of Limitations**. To the extent permitted by applicable law, Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

**Section 9.5** **Survival**. The indemnifications made pursuant to Section 8.3 herein and the representations and warranties, covenants, and other obligations arising under the Environmental Indemnity Agreement, shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by: any satisfaction, release or other termination of this Security Instrument, any assignment or other transfer of all or any portion of this Security Instrument or Lender's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Lender's rights and remedies pursuant hereto including but not limited to foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other

Loan Documents, any transfer of all or any portion of the Property (whether by Borrower or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Borrower from the obligations pursuant hereto.

## ARTICLE 10 - RESERVED

## ARTICLE 11 - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with the Loan Agreement.

## ARTICLE 12 - APPLICABLE LAW

### Section 12.1 GOVERNING LAW.

(a) THIS SECURITY INSTRUMENT WAS NEGOTIATED IN THE STATE OF OREGON AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF OREGON, AND THE PROCEEDS OF THE NOTE SECURED HEREBY WERE DISBURSED FROM THE STATE OF OREGON, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS SECURITY INSTRUMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF OREGON APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS WITH RESPECT TO THE PROPERTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF OREGON SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, AND THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF OREGON.

(b) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS SECURITY INSTRUMENT MAY

AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN DESCHUTES COUNTY, OREGON, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

**Section 12.2**    **Usury Laws**. Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

**Section 12.3**    **Provisions Subject to Applicable Law**. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE 13 - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "**Borrower**" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Lender**" shall mean "Lender and any subsequent holder of the Note," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "**Trustee**" shall mean "Trustee and any substitute Trustee of the estates, properties, powers, trusts and rights conferred upon Trustee pursuant to this Security Instrument," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

# ARTICLE 14 - MISCELLANEOUS PROVISIONS

**Section 14.1**     <u>No Oral Change</u>. This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 14.2**     <u>Successors and Assigns</u>. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 14.3**     <u>Inapplicable Provisions</u>. If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 14.4**     <u>Headings, Etc</u>. The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 14.5**     <u>Number and Gender</u>. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 14.6**     <u>Subrogation</u>. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 14.7**     <u>Entire Agreement</u>. The Note, the Loan Agreement, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, there are not, and were not, and no persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Instrument and the other Loan Documents.

**Section 14.8** **Limitation on Lender's Responsibility**. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

**Section 14.9** **Maturity Date**. The Maturity Date is **March 1, 2024**.

## ARTICLE 15 - DEED OF TRUST PROVISIONS

**Section 15.1** **Concerning the Trustee**. Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee or other compensation, except as set forth in Section 15.2 hereof, for any services rendered by Trustee in accordance with the terms hereof. Trustee may resign at any time upon giving thirty (30) days' notice to Borrower and to Lender. Lender may remove Trustee at any time or from time to time and select a successor trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this Section 15.1 for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.

**Section 15.2** **Trustee's Fees**. Unless required pursuant to applicable Governmental Requirements, no fees, costs or expenses shall be or become payable to Trustee or Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder; provided that, in connection with services rendered by Trustee in connection with any foreclosure or sale in accordance with the terms hereof or with respect to the release and discharge of the lien and security interest of this Security Instrument upon the full and final payment of the Debt, Trustee shall be entitled to reasonable and customary fees and reimbursement of reasonable out-of-pocket costs and expenses incurred by Trustee. The foregoing permitted fees, costs and expenses shall be paid by Borrower to Trustee and Trustee's agents and counsel promptly upon request and such fees, costs and expenses shall be secured by this Security Instrument.

**Section 15.3** **Certain Rights**. With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (i) to select, employ, and advise

**Exhibit A - Pg. Page 25 of 29** Case 24-31211-pcm11   Doc 11   Filed 04/30/24

with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Loan Agreement, the Note, this Security Instrument or the other Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his/her agents or attorneys, (iii) to select and employ, in and about the execution of his/her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or willful misconduct, and (iv) any and all other lawful action as Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting an action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.

      **Section 15.4**    **Retention of Money**. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

      **Section 15.5**    **Perfection of Appointment**. Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute trustee to more fully and certainly vest in and confirm to the Trustee or substitute trustee such estates, rights, powers, and duties, then, upon request by the Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

      **Section 15.6**    **Succession Instruments**. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his/her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in the Trustee's place.

## ARTICLE 16 - COMMERCIAL LOAN DOCUMENTS

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY BENEFICIARY CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY GRANTOR'S/BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY AN AUTHORIZED REPRESENTATIVE OF BENEFICIARY TO BE ENFORCEABLE.**

## ARTICLE 17 - STATE-SPECIFIC PROVISIONS

(a)     The Mortgaged Property is not used for agricultural, timber, or grazing purposes.

(b)     As used in this Security Instrument, the Note, and in the Loan Documents, "attorneys' fee" shall include attorneys' fees, if any, which shall be incurred whether or not legal action is commenced and any such fees incurred at trial, arbitration, interpleader, bankruptcy, hearing, or any judicial proceeding, and on appeal.

(c)     Notwithstanding anything to the contrary in the Loan Agreement, the following provisions shall apply:

### WARNING

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR MORTGAGE LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR MORTGAGE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR MORTGAGE LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

### [NO FURTHER TEXT ON THIS PAGE]

*[SIGNATURE PAGE FOR DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING]*

**IN WITNESS WHEREOF, THIS SECURITY INSTRUMENT** has been executed by Borrower under seal as of the day and year first above written.

**BORROWER:**

**72nd AVENUE PROPERTY LLC,**
an Oregon limited liability company

By: _[signature]_
Name: Richard E. Cassinelli
Its: Manager

**ACKNOWLEDGEMENT**

STATE OF _Oregon_ )
                        ) ss
COUNTY OF _Multnomah_ )

I certify that I know or have satisfactory evidence that RICHARD E. CASSINELLI is the person who appeared before me, and said person acknowledged that he or she signed this instrument as Manager of 72nd Avenue Property, LLC, an Oregon Limited liability company, and acknowledged it to be his or her free and voluntary act for the uses and purposes mentioned in this instrument.

Dated this _16_ day of _February_, 2023.

_[signature]_
Notary Public Signature

_Wendy Geurin_
Notary Public Print Name

My Commission Expires: _8-1-26_

OFFICIAL STAMP
WENDY ALICE GEURIN
NOTARY PUBLIC - OREGON
COMMISSION NO. 1026785
MY COMMISSION EXPIRES AUGUST 01, 2026

[NOTARY SEAL]

EXHIBIT "A"

Legal Description

Parcel 1, PARTITION PLAT NO. 2020-006, in the City of Tigard, County of Washington, and State of Oregon.

Washington County, Oregon **2023-006353**
D-M
Stn=2 S AKINS **02/17/2023 12:54:17 PM**
$140.00 $15.00 $11.00 $5.00 $60.00 **$231.00**

I, Joe Nelson, Director of Assessment and Taxation and Ex-Officio
County Clerk for Washington County, Oregon, do hereby certify that
the within instrument of writing was received and recorded in the
book of records of said county.

Joe Nelson, Director of Assessment and
Taxation, Ex-Officio County Clerk

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Parkview Financial REIT, LP
c/o Parkview Financial Fund GP, Inc.
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90025
Attention:  Paul S. Rahimian

*Above Space for Recorder's Use Only*

## DEED OF TRUST, SECURITY AGREEMENT,
## ASSIGNMENT OF RENTS AND FIXTURE FILING

### Dated February 17, 2023

| | |
|---|---|
| Grantor: | 72ND AVENUE PROPERTY LLC, an Oregon limited liability company (also referred to herein as "Trustor") |
| Trustee: | Craig G. Russillo, Schwabe, Williamson & Wyatt PC |
| Beneficiary: | Parkview Financial REIT, LP, a Delaware limited partnership<br>Parkview Financial 2020, LP, a Delaware limited partnership |

ADDITIONAL STATUTORY NOTICES:

(a)     The address of the entity holding a lien or other interest created by this instrument is:

Parkview Financial REIT, LP
c/o Parkview Financial Fund GP, Inc.
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90025
Attention:  Paul S. Rahimian

Parkview Financial 2020, LP
c/o Parkview Financial Fund GP, Inc.
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90025
Attention:  Paul S. Rahimian

(b)     The assessor's tax parcel account number for the property subject to the lien or in which the interest is created is 1S136DC03300.

(c)     Type of transaction:  Creation of deed of trust lien and security interests encumbering the property or properties described herein.

**THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH ORS 79.0502(3).**

1

**DEED OF TRUST, SECURITY AGREEMENT,**
**ASSIGNMENT OF RENTS AND FIXTURE FILING**

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTURE FILING ("Deed of Trust") is made as of February *17* 2023, by 72ND AVENUE PROPERTY LLC, an Oregon limited liability company ("Trustor"), whose address is 4804 NW Bethany Blvd., #I-2, Portland, Oregon 97229, to OLD REPUBLIC TITLE COMPANY OF OREGON ("Trustee"), whose address is 101 NB Brand Blvd., 14th Floor, Glendale, California 91203, for the benefit of both PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, in its capacity as "Administrative Agent" for the Lenders from time to time party to the "Loan Agreement" (as defined below) (in such capacity, "Administrative Agent") and a "Lender" under the Loan Agreement, and PARKVIEW FINANCIAL 2020, LP, a Delaware limited partnership, in its capacity as a "Lender" under the Loan Agreement (together with Parkview Financial REIT, LP, a Delaware limited partnership, in the capacities described above, individually and/or collectively, "Beneficiary"), whose address is c/o Parkview Financial Fund GP, Inc., 11601 Wilshire Boulevard, Suite 2100, Los Angeles, California 90025.

This Deed of Trust is subordinate only to that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by Trustor in favor of Avatar Portland Commercial LLC, a Delaware limited liability company, whose address for notice is 1200 Westlake Avenue N, #1006, Seattle, WA 98109, dated of even date herewith and recorded as instrument no. *2023-006339* of the official records of Washington County, State of Oregon (the "Senior Deed of Trust") securing a loan to Trustor in the original principal amount of ELEVEN MILLION TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($11,250,000.00) (the "Senior Loan"). Trustor agrees to comply with the terms and provisions of the Senior Deed of Trust and all documents and instruments evidencing or securing the Senior Loan.

**ARTICLE I**
**GRANTS AND OBLIGATIONS SECURED**

1.1     Real Property. Trustor irrevocably conveys, grants, transfers and assigns to Trustee, in trust, with power of sale, all of its right, title and interest in and to the following property, which Trustor now owns or may acquire later:

(a)     the real property more particularly described on Exhibit "A" (the "Land");

(b)     all buildings and other improvements located on or appurtenant to the Land and all machinery, equipment, appliances, tooling, furniture, fixtures, goods and other articles of real and personal property, affixed to or placed upon the Land or such buildings or other improvements (the "Improvements");

(c)     all licenses, privileges, tenements, hereditaments and appurtenances of or to the Land or the Improvements, including, without limitation, all rights-of-

2

way, easements, any land lying within the right-of-way of any street, open or proposed, adjoining the Land, all water rights and certificates and authorizations evidencing such rights, all oil and gas and other mineral rights and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land;

(d)     all rents, issues, profits, royalties, income and other benefits (collectively, the "Rents") derived from any lease, sublease, license, franchise or concession or other agreement (collectively, the "Leases") affecting the Land or the Improvements or their use or occupancy, and all of Trustor's interest in the Leases; and

(e)     all claims and demands, including claims or demands with respect to the proceeds of insurance, in effect with respect to the Land or the Improvements, and all awards made for the taking by eminent domain, or by any proceeding of purchase in lieu of any such taking, of all or any part of the Property (as defined below).

The property described in this Section 1.1 is referred to in this Deed of Trust as the "Real Property."

1.2     Personal Property. Trustor grants a security interest to Beneficiary in, and assigns to Beneficiary, all of the Trustor's right, title and interest in and to the following property and all proceeds of such property, which Trustor now owns or may acquire later:

(a)     all goods and tangible personal property located on the Real Property or wherever located if used or useable in connection with the use, operation or occupancy of the Real Property, including, without limitation, all appliances, furniture and furnishings, fittings, inventory, materials, supplies, equipment, fixtures and building materials, whether stored on the Real Property or elsewhere;

(b)     all general intangibles relating to design, development, operation, management and use of the Real Property and construction of the Improvements, including, without limitation, (i) all names under which or by which the Real Property may at any time be operated or known, all rights to carry on business under any such names or any variant of such names, and all goodwill in any way relating to the Real Property, (ii) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction of the Improvements or the use, occupancy or operation of the Real Property, (iii) all rights as a declarant (or its equivalent) under any covenants, conditions and restrictions or other matters of record affecting the Real Property, (iv) all materials prepared for filing or filed with any governmental agency, (v) all trademarks and (vi) all rights under any contract entered into in with contractors, architects, designers, engineers, consultants, managers, brokers and similar persons in connection with the development, design, use, operation, management and construction of the Real Property;

(c)     all architectural drawings, plans, specifications, soil tests and reports, feasibility studies, appraisals, engineering reports, financial analyses and reports and similar materials relating to the Real Property;

(d)     all payment and performance bonds or guarantees relating to the Real Property;

3

(e)     all reserves, deferred payments, deposits, refunds (including, without limitation, tax and insurance refunds), costs savings and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of the Real Property;

(f)     all proceeds and claims arising on account of any damage to or taking of the Property, including, without limitation, claims under insurance policies, and all causes of action and recoveries for any loss or diminution in the value of the Property;

(g)     all policies of, and proceeds resulting from, insurance relating to the Property, and all riders, amendments, renewals, supplements or extensions of such policies;

(h)     all deposits made with or other security given to utility companies or governmental entities by Trustor with respect to the Real Property, and all advance payments of insurance premiums made by Trustor with respect to the Real Property;

(i)     all shares of stock or other evidence of ownership of any part of the Property that is owned by Trustor in common with others, including all water stock relating to the Real Property, if any, and all documents or rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Real Property;

(j)     all proceeds, whether cash, promissory notes, contract rights or otherwise, of the sale or other disposition of all or any part of the estate of Trustor upon the Property;

(k)     all sales contracts, escrow agreements, and broker's agreements concerning the sale of the Property;

(l)     all of the leases, income, rents, issues, deposits, receipts, profits and proceeds generated by the use and occupancy of the Property to the extent such are not Rents or otherwise deemed to be real property, and all "accounts" (as defined in the Oregon Uniform Commercial Code) generated from the use and operation of the Property to which Trustor may be entitled, whether now due, past due or to become due; and

(m)     all deposit accounts or related rights to receive payment from depositories or institutions into which Trustor deposits (i) the Rents, (ii) any other income derived from the Property described under Section 1.2(l) above, (iii) any security deposits or other monies paid to Trustor or Trustor's property manager whether pursuant to the terms of a Lease or otherwise or, (iv) any proceeds of the Loan made pursuant to the Loan Agreement (defined below), (iv) any other amounts described in Sections 1.1 or 1.2, and (v) any proceeds of any such amounts.

The property described in this Section 1.2 is referred to in this Deed of Trust as the "Personal Property." The Real Property and the Personal Property are collectively referred to as the "Property." This Deed of Trust constitutes a security agreement within the meaning of the Oregon Uniform Commercial Code and Trustor grants Beneficiary a security interest in all elements or constituent parts of the Property which are, or are deemed to be, fixtures or personal

4

property. Trustor shall, upon request, execute and deliver such financing statements and other documents and agreements as Beneficiary may request to perfect and continue Beneficiary's security interest in the Personal Property, and Trustor authorizes Beneficiary to file any financing statements Beneficiary may deem necessary from time to time without the joinder or approval of Trustor.

1.3     Fixture Filing. The Personal Property in which Beneficiary has a security interest includes goods which are or shall become fixtures on the Land or Improvements. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of ORS 79.0502(3). This filing shall remain in effect as a fixture filing until this Deed of Trust is released or satisfied of record or its effectiveness otherwise terminates as to the Property. In that regard, the following information is provided:

Name of Debtor: 72ND AVENUE PROPERTY LLC
Address of Debtor: See Section 5.5 below.
Name of Secured Party: Parkview Financial REIT, LP, as Administrative Agent and Lender
Address of Secured Party: See Section 5.5 below.
Name of Secured Party: Parkview Financial 2020, LP, as Administrative Agent and Lender
Address of Secured Party: See Section 5.5 below.

1.4     Obligations Secured. The grants, transfers, assignments and security interests made in Sections 1.1, 1.2 and 3.1 are for the purpose of securing, in such order of priority as Administrative Agent may determine:

(a)     the payment of all amounts owing under the Promissory Note dated December 22, 2021 in the principal amount of $11,840,000.00 made by Trustor and payable to the order of Beneficiary (the "Note"), and any renewals, extensions, substitutions or modifications of the Note, including specifically that certain First Amendment to Loan Documents (as referenced in Section 1.4(b) below), establishing the unpaid principal balance of the Note as $1,575,000.00 as of the date hereof;

(b)     payment and performance of all obligations of Trustor under a Loan Agreement dated as of December 22, 2021, and as amended by a First Amendment to Loan Documents dated as of February 15, 2022 (as amended, the "Loan Agreement"), by and between Trustor, as "Borrower", and Beneficiary, as "Administrative Agent" and "Lender", and any and all other "Loan Documents" (as defined in the Loan Agreement);

(c)     performance of and compliance with all of the terms and conditions of each agreement of Trustor contained in this Deed of Trust and any modifications or substitutions of this Deed of Trust;

(d)     subject to Section 4.8 below, payment of all amounts advanced by Beneficiary pursuant to the terms of this Deed of Trust or any other Loan Document; the payment of such additional sums and the performance of all other obligations now or later owing from Trustor to Beneficiary, whether otherwise secured or not, payable to or otherwise acquired

5

by Beneficiary, when the instrument evidencing such obligation recites that it is intended to be secured by this Deed of Trust; and

(e) all modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; or (ii) modifications, extensions or renewals at a different rate of interest whether or not in the case of a note, the modification, extension or renewal is evidenced by a new or additional promissory note.

Trustor acknowledges that neither Trustor's obligations under the Environmental Indemnity of December 22, 2021 executed by Trustor in favor of Beneficiary (the "Environmental Indemnity") nor the obligations of any guarantor under any guaranty delivered to Beneficiary for the purpose of guaranteeing Trustor's obligations under the Note are secured by this Deed of Trust. Capitalized terms used herein but not otherwise defined shall have the respective meanings ascribed to such terms in the Loan Agreement.

## ARTICLE II
## TRUSTOR'S COVENANTS

2.1 <u>Condition of Property</u>. Trustor shall maintain and preserve the Property and the adjoining sidewalks and grounds in good condition and repair and in a prudent and businesslike manner, and shall not commit or permit any waste to or deterioration of the Property. Trustor shall undertake all acts reasonably necessary to protect and preserve Beneficiary's security under this Deed of Trust.

2.2 <u>Alteration of Improvements</u>. Trustor shall not remove, demolish or structurally alter any Improvement or permit or suffer the same to be done, except such alterations as may be required by laws, ordinances, rules, regulations or orders of governmental authorities or by the terms of any Loan Document. Trustor shall complete promptly and in a good and workmanlike manner any Improvement which may be constructed on the Property and promptly restore in like manner any Improvement which may be damaged or destroyed by any cause whatsoever.

2.3 <u>Compliance With Laws</u>. Trustor shall comply with all laws, ordinances, rules, regulations and orders of any governmental authority affecting the Property or requiring any alterations or improvements to be made. Trustor shall not commit, suffer or permit any act to be done with respect to the Property in violation of any law or ordinance, or any covenant, condition or restriction affecting the Property.

2.4 <u>Liens</u>. Except as provided below, Trustor shall not suffer any liens or encumbrances to attach to the Property, and shall promptly pay and promptly discharge, at Trustor's sole cost and expense, all liens and other encumbrances affecting the Property, except those items shown on Schedule B of the policy of title insurance of this date issued to Beneficiary in connection with this Deed of Trust and taxes and assessments not delinquent. The existence of any mechanic's, laborer's, materialman's, supplier's, vendor's or statutory lien or right to any such lien shall not constitute a violation of this Section if payment is not yet due

6

under the contract, obligation, or statute which is the foundation of such lien or if Trustor is contesting in good faith the validity of any such lien or other encumbrance pursuant to Section 5.3 below.

### 2.5 Hazardous Materials.

(a) Trustor (i) shall keep and maintain the Property in compliance with, and shall not cause or permit a violation of, any "Hazardous Materials Laws" (as defined in the Loan Agreement) on or about the Property, and (ii) shall not permit its tenants to engage in any activity on or about the Property in violation of any Hazardous Materials Law.

(b) Trustor shall immediately advise Beneficiary in writing of (i) any enforcement, cleanup, removal or other governmental or regulatory actions threatened or instituted with respect to the Property pursuant to any Hazardous Materials Law; (ii) any claim made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from the existence or threatened existence of any "Hazardous Materials" (as defined in the Loan Agreement) (the matters set forth in clauses (i) and (ii) above are referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

(c) Beneficiary shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims if Beneficiary, in its reasonable judgment, believes such joinder or participation to be necessary to ensure the timely repayment of the obligations secured by this Deed of Trust, or to protect the security of this Deed of Trust or Beneficiary from incurring liability in connection with any Hazardous Materials Claim. Trustor shall pay Beneficiary's reasonable attorneys' fees incurred in connection with any such proceeding (including appellate proceedings). Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against, any loss, damage, cost, expense, claim or liability directly or indirectly arising out of or attributable to the use; generation; storage; release; threatened release, discharge; or disposal of presence of Hazardous Materials on or about the Property, including, without limitation: (i) all foreseeable consequential damages incurred by Beneficiary; (ii) the costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans; and (iii) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (i) and (ii), including, without limitation, reasonable attorneys' fees.

(d) Trustor shall promptly undertake all necessary remedial work ("Remedial Work") in response to any Hazardous Materials Claims or the actual or threatened presence or release of any Hazardous Materials on or about the Property. All Remedial Work shall be conducted (i) in a diligent and timely fashion by licensed contractors acting under the supervision of a consulting environmental engineer; (ii) pursuant to a detailed written plan for the Remedial Work approved by each agency or person whose approval is legally required or

7

Case 24-31211-pcm11    Doc 11    Filed 04/30/24

who has a legal or contractual right to such approval; and (iii) only following receipt of any required permits, licenses or approvals. Trustor shall not undertake any Remedial Work or enter into any settlement agreement, consent decree, or other compromise in respect of any Hazardous Materials Claim without Beneficiary's prior written consent, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing sentence, Beneficiary's prior written consent shall not be necessary if the presence of Hazardous Materials on or about the Property either poses an immediate threat to the health or safety of any person or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action. In any such event, Trustor shall notify Beneficiary as soon as practicable of any action so taken. Trustor shall submit to Beneficiary, promptly upon receipt or preparation, copies of all reports, studies, analyses, correspondence, governmental comments or approvals, proposed removal or other Remedial Work contracts and similar information prepared or received by Trustor in connection with any Remedial Work or Hazardous Materials relating to the Property. Trustor shall pay Beneficiary's reasonable fees and costs incurred in connection with monitoring or review of the Remedial Work.

(e)     The obligations of Trustor and the rights of Beneficiary under this Section 2.5 are in addition to and not in substitution of the obligations of Trustor and the rights of Beneficiary under any applicable Hazardous Materials Law. Beneficiary's rights and Trustor's obligations under Section 2.5(c) above shall survive the repayment of the loan evidenced by the Note, the reconveyance of the lien of this Deed of Trust, judicial or nonjudicial foreclosure under this Deed of Trust and Beneficiary's acceptance of a deed in lieu of such foreclosure.

2.6     <u>Indemnity and Reimbursement</u>. Trustor shall defend, indemnify and hold Beneficiary or any affiliate of Beneficiary harmless from any loss, damage, cost, expense, claim or liability arising out of Beneficiary's interest under this Deed of Trust or in connection with the Property and shall appear in and defend any action or proceeding which purports to affect Beneficiary's interests relative to the loan evidenced by the Note or the rights, powers and duties of Trustee. In addition, Trustor shall pay upon demand, after expenditure, all sums expended for expenses paid or incurred by Trustee or Beneficiary pursuant to any of the terms of this Deed of Trust or in any action or proceeding in which Beneficiary or Trustee may appear or be made a party, whether or not pursued to final judgment, and in any exercise of any of the rights or remedies granted to Beneficiary by this Deed of Trust or any of the Loan Documents, whether or not any such right or remedy is exercised to completion. Such expenses shall include, without limitation, court costs, expenses for evidence of title, appraisals, inspections and surveys and trustees' and attorneys' fees (including fees in appellate proceedings). In addition, Trustor shall pay upon demand the ordinary and reasonable fees of Trustee in connection with any such action or proceeding. All such amounts shall bear interest from the date of expenditure by Beneficiary or Trustee or the date any such fees were incurred at the rate then in effect under the Note.

2.7     <u>Taxes and Impositions</u>.

(a)     Trustor shall pay, prior to delinquency, all real and personal property taxes and assessments and all other taxes and assessments of any kind, including, without limitation, nongovernmental levies or assessments such as maintenance charges, owner association dues or charges and levies or charges resulting from covenants, conditions and

restrictions affecting the Property, which are assessed or imposed upon the Property, or become due and payable, and which create or may create a lien upon any part of the Property (all such taxes, assessments and other charges are referred to in this Deed of Trust as "Impositions").

(b)     If at any time after the date of this Deed of Trust there shall be a license fee, tax or assessment imposed on Beneficiary and measured by or based in whole or in part upon the amount of the outstanding obligations secured by this Deed of Trust, then all such taxes, assessments or fees shall be deemed to be included within the term "Impositions" as defined in subsection (a) above, and Trustor shall pay and discharge such amounts upon Beneficiary's demand accompanied by a statement showing the calculation of the tax, assessment or fee. Anything to the contrary in this Deed of Trust notwithstanding, Trustor shall have no obligation to pay any franchise, estate, inheritance, income, excess profits or similar tax levied on Beneficiary.

(c)     Trustor shall furnish Beneficiary official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing payment of the Impositions at least fifteen (15) days before they become delinquent.

(d)     Upon Beneficiary's request, Trustor shall cause to be furnished to Beneficiary a tax reporting service covering the Property of a type, duration and with a company satisfactory to Beneficiary.

(e)     Beneficiary may require that Trustor deposit with Beneficiary, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual Impositions. In such event, Trustor shall cause all bills, statements or other documents relating to Impositions to be sent or mailed directly to Beneficiary. Upon receipt of such bills or statements, and providing Trustor has deposited sufficient funds with Beneficiary pursuant to this Section, Beneficiary shall pay such amounts as may be due under such bills or statements out of the funds so deposited with Beneficiary. If at any time and for any reason the funds deposited with Beneficiary are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall promptly deposit an amount equal to such deficiency with Beneficiary. Notwithstanding the foregoing, nothing in this Deed of Trust shall cause Beneficiary to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary pursuant to this Section. Beneficiary may commingle such reserve with its own funds and Trustor shall not be entitled to interest on any amounts so held.

2.8     Utilities. Trustor shall pay when due all utility charges which are incurred by Trustor for the benefit of the Property or which may become a lien against the Property, including, without limitation, all charges for gas, electricity, water or sewer services furnished to the Property and all other assessments or charges of a similar nature, whether public or private, affecting the Property, whether or not such taxes, assessments or charges are or may become a lien on the Property.

2.9     Loan Statement Fees. Trustor shall pay the amount demanded by Beneficiary or its authorized loan servicing agent (but in no case an amount greater than the

9

maximum amount allowed by law) for any statement regarding the obligations secured by this Deed of Trust.

2.10 <u>Books and Records</u>. Trustor shall keep and maintain or cause to be kept and maintained at its place of business set forth in Section 5.5 below, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property, whether such income and expenses are realized by Trustor or by any other person or entity. Beneficiary or its designees shall have the right, from time to time upon reasonable notice during normal business hours, to examine such books, records and accounts at the office of Trustor or other person or entity maintaining such books, records and accounts and to make copies of any such books, records or accounts, and Trustor shall make its officers, personnel and independent accountants available to discuss the affairs, finances and accounts of Trustor with Beneficiary. Trustor shall promptly inform Beneficiary of any change in the location of Trustor's principal office or books and records or any change in Trustor's name.

2.11 <u>Insurance</u>. Trustor shall at all times provide, maintain, deliver to Beneficiary and keep in full force and effect:

(a) policies of insurance insuring the Property against loss or damage by risks embraced in coverage of the type now known as the broad form of all-risk, extended coverage, in an amount not less than the full replacement cost of the Improvements (exclusive of the cost of excavations, foundations, and footings below the lowest basement floor and with an ordinance endorsement); and with not more than $5,000 deductible from the loss payable for any casualty. The policies of insurance carried in accordance with this subsection (a) shall contain the "Replacement Cost Endorsement;"

(b) commercial general liability insurance (including coverage for elevators and escalators, if any on the Property, and, if any construction of new Improvements occurs after the execution of this Deed of Trust, completed operations coverage for two years after the construction of such Improvements has been completed) on an "occurrence basis" against claims for "personal injury," including, without limitation, bodily injury, death or property damage, occurring on, in or about the Property and the adjoining streets and sidewalks, or arising from or connected with the use, conduct or operation of Trustor's business or interest, in an amount of not less than $1,000,000 with respect to personal injury or death of one or more persons and with respect to damage to property. Beneficiary shall have the right from time to time to require an increase in the amount of coverage based on the standard practices in the industry and the risks involved in Trustor's business, operations or interest;

(c) business interruption insurance or loss of "rental value" insurance in an amount not less than one year's income from the Property or otherwise in an amount satisfactory to Beneficiary;

(d) workers' compensation, employers' liability, commercial automobile liability and excess umbrella liability coverage;

(e) insurance against damage by flood or similar occurrences in the event such insurance is available pursuant to the provisions of the Flood Disaster Protection Act

10

of 1973 or other applicable legislation, such insurance to be in an amount equal to the lesser of one hundred percent of the insurable value of the Property or the maximum amount obtainable under such legislation; and

(f)     such other insurance against such risks or hazards, or other risks and hazards, and in such amounts, as may from time to time be reasonably required by Administrative Agent, including, without limitation, policies insuring against earthquakes or other specified hazards affecting Administrative Agent's or Beneficiary's security as may be required by governmental regulations, or as may be reasonably available for improvements similar to the Improvements located in the same locality as the Property.

All policies of insurance shall be with companies approved by Administrative Agent, shall contain the Standard NonContributory Mortgagee Clause and the Standard Lenders' Loss Payable Clause, or their equivalents, in favor of Administrative Agent, and shall provide that the proceeds thereof shall be payable to Administrative Agent to the extent of its interest. In the event of the judicial or nonjudicial foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment, in whole or in part, of the indebtedness secured by this Deed of Trust, all right, title and interest of Trustor in and to any insurance policy then in force shall pass to the purchaser or grantee. Upon Administrative Agent's demand, Trustor shall furnish Administrative Agent with the original of each policy required to be obtained under this Section. Each insurance policy shall provide that it shall not be modified or canceled without 30 days' prior written notice to Administrative Agent. Trustor shall furnish Administrative Agent with receipts for the payment of premiums of such insurance policies or other evidence of such payment reasonably satisfactory to Administrative Agent. If Trustor does not deliver to Administrative Agent evidence of payment of the premium for each insurance policy required under this Deed of Trust at least 30 days prior to the expiration of any expiring policy, then Administrative Agent may, but shall not be obligated to, procure such insurance and Trustor shall pay the premiums promptly upon demand. Administrative Agent shall not by the fact of approving, disapproving, accepting, preventing the obtaining or failing to obtain any such insurance, incur any liability for the form or legal sufficiency of insurance contracts, solvency of insurers, or payment of losses, and Trustor assumes full responsibility for such matters and any resulting liability.

Upon the occurrence of an Event of Default or any event which with the giving of notice, the lapse of time, or both, would become an Event of Default, Administrative Agent may require that Trustor deposit with Administrative Agent, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual insurance premiums on all policies of insurance required by this Deed of Trust. In such event, Trustor shall cause all bills, statements or other documents relating to such insurance premiums to be sent or mailed directly to Administrative Agent. Upon receipt of such bills or statements, and providing Trustor has deposited sufficient funds with Beneficiary pursuant to this Section, Administrative Agent shall pay such amounts as may be due under such bills or statements out of the funds so deposited with Administrative Agent. If at any time and for any reason the funds deposited with Administrative Agent are or will be insufficient to pay such amounts as may then or subsequently be due, Administrative Agent shall notify Trustor and Trustor shall promptly deposit an amount equal to such deficiency with Administrative Agent. Notwithstanding the foregoing, nothing contained in this Deed of Trust shall cause Administrative Agent to be deemed a trustee of such funds or to be obligated to

11

pay any amounts in excess of the amount of funds deposited with Administrative Agent pursuant to this Section. Administrative Agent may commingle such reserve with its own funds and Trustor shall not be entitled to interest on any amounts so held.

2.12 <u>Casualties; Insurance Proceeds</u>. Trustor shall give prompt written notice to Administrative Agent of any casualty to the Property resulting in damage in an amount greater than $25,000, whether or not such casualty is covered by insurance. In the event of such casualty, all proceeds of insurance shall be payable to Administrative Agent and Trustor authorizes and empowers Administrative Agent, at Administrative Agent's option and in Administrative Agent's reasonable discretion as attorney-in-fact for Trustor, to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct from such proceeds Administrative Agent's expenses incurred in their collection. In the event of any damage to or destruction of the Improvements, so long as no Event of Default has occurred and is continuing or no event has occurred and is continuing which, with the passage of time or the giving of notice, or both, would become an Event of Default, Administrative Agent shall hold the balance of such proceeds to be used to reimburse Trustor for the costs of reconstruction of the Improvements if all of the following conditions are satisfied within 60 days from the date of the damage or destruction:

(a) Trustor satisfies Administrative Agent that after the reconstruction is completed, the value of the Property as reasonably determined by Administrative Agent, will be not less than the value of the Property on the date of this Deed of Trust;

(b) In Administrative Agent's reasonable judgment, such insurance proceeds are sufficient to pay all costs of reconstruction of the Improvements, including make the payments required under the Note; or if such proceeds are not sufficient, Trustor deposits additional funds into the Borrower's Funds Account sufficient to pay such additional costs of reconstructing the Improvements;

(c) Trustor has delivered to Administrative Agent a construction contract for the work of reconstruction in form and content reasonably satisfactory to Administrative Agent with a contractor reasonably satisfactory to Administrative Agent; and

(d) Administrative Agent in its reasonable discretion has determined that Construction of the Improvements will still be completed on or before the "Completion Date", as that term is defined in the Loan Agreement.

Upon Trustor's satisfaction of the conditions to disbursement of the insurance proceeds, Trustor shall promptly and diligently restore the Improvements to the equivalent of their condition immediately prior to the casualty or to such other improved condition as is necessary to comply with the requirements of this Deed of Trust or any applicable governmental entity. Disbursements of such insurance proceeds shall be in accordance with the disbursement procedures set forth in the Loan Agreement. Any proceeds held by Administrative Agent upon Trustor's failure to satisfy the conditions to disbursement within the time allowed above or those proceeds not required to reconstruct the Improvements, shall be applied to the obligations outstanding under the Note. If after applying the insurance proceeds to the payment of the sums

12

secured by this Deed of Trust, Administrative Agent reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Trustor shall, upon written demand from Administrative Agent, prepay such an amount of the loan evidenced by the Note as will reduce the principal amount outstanding under the Note to an amount for which Administrative Agent's security is adequate in light of Administrative Agent's underwriting standards in making the loan evidenced by the Note.

2.13   <u>Condemnation and Other Awards</u>.   Trustor shall give prompt notice to Administrative Agent of the institution or threatened institution of any condemnation proceeding affecting the Property.   Trustor shall undertake such acts as shall be reasonably necessary to protect its rights in any such proceeding and shall cause any awards or settlements to be paid over to Administrative Agent.   Trustor may be the nominal party in such proceeding but Administrative Agent shall be entitled to participate in and to control such proceeding and to be represented by counsel of its choice, and Trustor shall deliver, or cause to be delivered, to Administrative Agent such instruments as may be requested by it from time to time to permit such participation.   If any part of the Property is taken or diminished in value, or if a consent settlement is entered, by or under threat of such proceeding, Trustor assigns to Administrative Agent any award or settlement payable to Trustor by virtue of its interest in the Property to be held by Administrative Agent, in trust, subject to the lien and security interest of this Deed of Trust.   Any such award or settlement shall be first applied to reimburse Administrative Agent for all costs and expenses, including reasonable attorneys' fees (including fees in appellate proceedings), incurred in connection with the collection of such award or settlement. Administrative Agent shall disburse or apply, as applicable, the balance of the award or settlement upon the satisfaction of, or failure the failure to satisfy, the same conditions to the disbursement of insurance proceeds set forth in Section 2.12 above within 60 days after the payment of the award or settlement. If after applying the proceeds of any award or settlement to the payment of the sums secured by this Deed of Trust, Administrative Agent reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Trustor shall, upon written demand from Administrative Agent, prepay such an amount of the loan evidenced by the Note as will reduce the principal amount outstanding under the Note to an amount for which Administrative Agent's security is adequate in light of Administrative Agent's underwriting standards in making the loan evidenced by the Note.

2.14   <u>Transfer</u>.   Trustor agrees that if any "Transfer" (as defined below) occurs without the prior written consent of Administrative Agent, Administrative Agent shall have the right at its option, without prior demand or notice, to declare all sums secured by this Deed of Trust immediately due and payable.   Administrative Agent's consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions.   Administrative Agent may grant or deny such consent in its sole discretion. "Transfer" shall mean (a) the sale, agreement to sell, transfer or conveyance of the Property, or any portion of or interest in the Property, including, without limitation, air rights and development rights, whether voluntary, involuntary, by operation of law or otherwise, or the lease of all or substantially all of the Property, but shall not include the conveyance of easements, licenses or leases reasonably necessary for the operation of the Improvements, or the repair or replacement of any personal property in the ordinary course of business; (b) any transfer by way of security, including the placing or permitting the placing on the Property of any mortgage, deed of trust, assignment of rents or other security device; or (c) if Trustor, or any person owning

13

directly or indirectly through one or more entities any interest in Trustor (individually and collectively a "Principal"), is a partnership, joint venture, trust, closely-held corporation, limited liability company or other entity, the issuance, sale, conveyance, transfer, disposition or encumbering of any class of the currently issued and outstanding stock, membership interests or other beneficial interests of Trustor or any Principal, or a change of any general partner or any joint venturer or manager of Trustor or any Principal, either voluntarily, involuntarily, or otherwise. For purposes of this section, "closely-held corporation" shall mean any corporation not listed on a national or regional stock exchange.

       2.15   <u>Lien Subrogation</u>. As further security, Beneficiary shall be subrogated to all liens superior to this Deed of Trust, whether or not released of record, to the extent paid out of the proceeds of the loan secured by this Deed of Trust.

       2.16   <u>Tests and Studies</u>.

       (a)   If an Event of Default has occurred and is continuing, Trustor agrees to permit Administrative Agent and any prospective bidder at any judicial or nonjudicial foreclosure sale and their respective agents and contractors to enter upon the Property for the purpose of conducting such tests, inspections, studies, surveys and other information gathering activities (collectively, the "Tests and Studies") with respect to the Property as any of them may reasonably deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the structural integrity of the Improvements, the presence of Hazardous Materials in or around the Property, the occurrence of any violation of any Hazardous Material Law in or around the Property and the status of leasing and occupancy of the Improvements. Except in case of an emergency, or when Trustor or any tenant has abandoned the Property, or if it is impracticable to do so, Administrative Agent shall give Trustor reasonable advance notice of Administrative Agent's intent to enter the Property and enter the Property only during normal business hours. Trustor agrees to fully cooperate with such parties in their efforts to conduct the Tests and Studies, and further agrees to make available such portions of the Property as any of them may designate. If Administrative Agent or any such person is refused the right of entry and inspection by Trustor or any tenant of the Property, or is otherwise unable to enter and conduct Tests and Studies on the Property without a breach of peace, Administrative Agent may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Administrative Agent or such other persons to exercise the rights under this Section.

       (b)   Trustor authorizes Administrative Agent to make available to any party (including, without limitation, any governmental authority and any prospective bidder at any judicial or nonjudicial foreclosure sale of the Property), all information which Administrative Agent may have with respect to the Property, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports. Trustor consents to Administrative Agent's notifying any party (either as part of a notice of sale or otherwise) of the availability of any of the Tests and Studies and the information contained in them. Trustor acknowledges that Administrative Agent cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained in them, to

14

prospective bidders at any judicial or nonjudicial foreclosure sale of the Property may have a material and adverse effect upon the amount which a party may bid at such sale. Trustor agrees that Administrative Agent shall have no liability as a result of delivering any of the Tests and Studies or any information contained in them to any third party, and Trustor releases Administrative Agent from all claims, damages or causes of action arising out of or incidental to the Tests and Studies or their delivery.

(c)     All costs and expenses incurred by Administrative Agent pursuant to this Section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Property customarily incurred during the conduct of the Tests and Studies, court costs and attorneys' fees, whether incurred in litigation or not and whether before or after judgment (including such costs and fees in appellate proceedings), shall be payable by Trustor and, to the extent advanced or incurred by Administrative Agent, shall be reimbursed to Administrative Agent by Trustor upon demand. All costs and expenses incurred or advanced by Administrative Agent pursuant to this Section, together with interest at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

## ARTICLE III
## ASSIGNMENT OF LEASES AND RENTS

3.1     <u>Assignment of Rents</u>. Trustor absolutely assigns to Beneficiary the Leases and Rents, together with all guaranties of any obligations of any lessee (the "Lessee") under any Lease and the right of Trustor to alter, modify or terminate the Leases or any of their terms. Trustor irrevocably appoints Administrative Agent its true and lawful attorney-in-fact, at the option of Administrative Agent at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or Administrative Agent, for all the Rents and to apply the Rents to the amounts secured by this Deed of Trust in such order as Administrative Agent shall elect. Notwithstanding the foregoing, so long as no Event of Default has occurred and is continuing and no event has occurred and is continuing which, with the passage of time or the giving of notice, or both, would become an Event of Default, Trustor shall have the right and license to collect the Rents (but not more than one month in advance). This assignment of the Rents is an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

3.2     <u>Covenants Regarding Leases</u>.

(a)     Trustor shall timely perform all of its obligations under the Leases and give prompt notice to Beneficiary of any material failure on its part to do so and of any claim made by any Lessee of any such failure by Trustor.

(b)     Trustor shall, short of termination, enforce, or secure in the name of Beneficiary the performance of, each obligation of a Lessee or guarantor under any Lease, and Trustor shall appear in and defend any action or proceeding arising out of the Leases. Upon request by Administrative Agent after the occurrence and during the continuance of an Event of Default, Trustor will do so in the name and on behalf of Administrative Agent but at the expense of Trustor. Trustor shall pay all costs and expenses of Administrative Agent, including, without

15

limitation, attorneys' fees, in any action or proceeding in which Administrative Agent may appear (including appellate proceedings).

(c)     Except for last month's rent under a Lease, Trustor shall neither receive nor collect any Rents from any Lessee for a period of more than one month in advance (whether in cash or by evidence of indebtedness), nor pledge or otherwise encumber or assign future payments of Rents, nor waive, discount, setoff, compromise or in any manner release or discharge any Lessee of or from any obligations under such Lessee's Lease.

(d)     Without obtaining, in each instance, the prior written consent of Administrative Agent, Trustor shall not:  modify, alter, cancel, terminate or consent to any surrender of any Lease; commence any action of ejectment or any summary proceedings for dispossession of any Lessee; exercise any right of recapture provided in any Lease; waive or release any Lessee or any guarantor from any obligation or condition to be performed by such Lessee or guarantor; or consent to any subletting of any part of the Property, or to any assignment of any Lease, or to any assignment or further subletting of any sublease.

(e)     Trustor shall keep the Property leased at rental rates equal to or greater than the rental rates approved by Administrative Agent.  All leases shall be on terms and conditions acceptable to Administrative Agent and, unless otherwise approved by Administrative Agent in writing, shall be on the standard lease form approved by Administrative Agent.

3.3     Survival.  The rights and powers of Beneficiary under the assignment of rents provided for above shall continue until expiration of the redemption period from any judicial or nonjudicial foreclosure sale under this Deed of Trust, whether or not any deficiency remains after a foreclosure sale.

3.4     Exculpation of Beneficiary.  The acceptance by Beneficiary of the assignment of the Rents provided for above with all of Beneficiary's rights under this Article III shall not, prior to entry upon and taking possession of the Property by Beneficiary, be deemed or construed to constitute Beneficiary a "mortgagee in possession" nor at any time obligate Beneficiary to appear in or defend any action or proceeding relating to the Leases, the Rents or the Property, or to take any action permitted under this Deed of Trust or to expend any money or incur any expenses or perform or discharge any obligation under any Lease or to assume any obligation or responsibility for any security deposits or other deposits delivered to Trustor by any Lessee and not assigned and delivered to Beneficiary, nor shall Beneficiary be liable for any injury or damage to person or property sustained by any person in connection with the Property.

3.5     Waiver.  Neither the collection of the Rents or their application by Beneficiary nor the entry upon and taking possession of the Property by Beneficiary shall be deemed to cure or waive any default or waive, modify or affect any notice of default under any of the other Loan Documents or invalidate any act done pursuant to any such notice.  The enforcement of any such right or remedy by Beneficiary, once exercised, shall continue for so long as Beneficiary shall elect, notwithstanding that the collection and application of the Rents may have cured the original default.  If Beneficiary shall after such enforcement elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy

16

under this Deed of Trust may be reasserted at any time and from time to time following any subsequent default.

3.6    Further Assignments.    Trustor agrees to give Beneficiary at any time upon demand any further or additional form of assignment or transfer of the Rents or of the Leases, as may be requested by Beneficiary, and to deliver to Beneficiary Trustor's executed copies of all Leases.

## ARTICLE IV
## EVENTS OF DEFAULT; REMEDIES

4.1    Default.    Any of the following events shall constitute an "Event of Default" under this Deed of Trust:

(a)    Trustor's failure to pay when due any installment of principal or interest under the Note within five (5) days after the due date therefor, or any other sum required to be paid by the terms of any Loan Document or secured by this Deed of Trust;

(b)    The occurrence of an Event of Default (as defined in the Loan Agreement) under the Loan Agreement;

(c)    Trustor's failure to observe or perform its obligations under Section 2.5(a) above or to maintain the insurance required to be maintained under Section 2.11 above, the occurrence of any Transfer in violation of Section 2.14 above or the failure of Trustor to cooperate in making the Property available for Tests and Studies in violation of the provisions of Section 2.16 above;

(d)    the failure of Trustor, within 30 days following notice from Beneficiary, to observe or perform any covenant or other agreement contained in this Deed of Trust other than those covenants and agreements set forth in Sections 4.1(a), (b) and (c) above; provided, however, that the notice and 30-day grace period set forth above shall be applicable only to a failure to observe or perform any covenant or other agreement which is reasonably susceptible of being cured; provided further, that should Trustor be unable to cure its failure within such 30-day period despite beginning to cure such failure promptly after receipt of notice and prosecuting such attempt diligently during such 30-day period, the cure period shall be extended an additional 60 days so long as (i) Trustor continues diligently to prosecute the cure during such additional period and (ii) such failure does not materially and adversely affect Beneficiary or its rights under the Loan Documents;

(e)    Trustor shall be in default in the payment of any indebtedness or the performance of any other obligation secured by a lien on the Property, and such default is declared and is not cured within the time, if any, specified for such a cure in any applicable agreement; or

(f)    any of the Loan Documents, any guaranty of any of Trustor's obligations, any agreement or instrument securing any such guaranty, the Environmental Indemnity or any letter of credit issued for Beneficiary's benefit shall cease to be a valid, binding and enforceable obligation of the person purported to be bound; or the lien of this Deed of Trust,

17

any Loan Document securing any of Trustor's obligations or any security instrument securing any guaranty of Trustor's obligations shall cease to be a valid and enforceable lien on the property it purports to encumber or fail to have the priority represented or warranted by Trustor or such guarantor or otherwise stated in any title insurance policy issued to Beneficiary which insures the validity and priority of such lien; or Trustor shall assert such cessation or failure in writing.

4.2 <u>Actions by Trustee or Beneficiary to Preserve Security</u>. Upon the occurrence and during the continuance of an Event of Default or an event which, with the lapse of time or the giving of notice, or both, would become an Event of Default, and irrespective of whether Beneficiary elects to accelerate the indebtedness evidenced by the Note as permitted in Section 4.3, Beneficiary and Trustee, in Beneficiary's sole discretion, without obligation to do so and without further notice to or demand upon Trustor and without releasing Trustor from any obligation, may undertake such acts with respect to the Property as either may deem reasonably necessary to protect Beneficiary's security under this Deed of Trust, including, without limitation, any acts required by this Deed of Trust to be undertaken by Beneficiary. Without limiting their general powers, Beneficiary and Trustee shall have the right, but not the obligation, (a) to enter upon and take possession of the Property; (b) to make additions, alterations, repairs and improvements to the Property which they or either of them may consider necessary or proper to keep the Property in good condition and repair; (c) to appear and participate in any action or proceeding affecting or which may affect the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee; (d) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appear to affect the security of this Deed of Trust or be or appear to be superior to the lien of this Deed of Trust; (e) pay any expenses incurred or which, in Beneficiary's judgment, should be incurred in connection with the ownership, use and operation of the Property, including, without limitation, Impositions, insurance premiums and charges for utilities and maintenance; and (f) in exercising such powers, to pay necessary expenses and employ necessary or desirable consultants. Any amounts expended by Beneficiary pursuant to this Section shall bear interest at the rate then in effect under the Note and shall be secured by this Deed of Trust.

4.3 <u>Remedies</u>. Upon the occurrence of any Event of Default, Beneficiary may do any one or more of the following:

(a) terminate its obligation to disburse any amounts under the Loan Agreement;

(b) declare all sums secured by this Deed of Trust immediately due and payable without any presentment, demand, protest or notice of any kind;

(c) terminate Trustor's right and license to collect the Rents and either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, and without regard to the adequacy of its security, enter upon and take possession of the Property, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, make, modify, enforce, cancel or accept the surrender of any Lease, increase the income from any Lease or protect the security of this Deed of Trust and, with or without taking possession of

18

the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply them, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured by this Deed of Trust, all in such order as Beneficiary may determine. The entering upon and taking possession of the Property, the collection of the Rents and the application of them as provided for above shall not cure or waive any Event of Default or notice of default or invalidate any act done in response to an Event of Default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of Rents, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale provided below;

(d)     commence an action for complete or partial judicial foreclosure of this Deed of Trust or to specifically enforce any of the covenants contained in this Deed of Trust;

(e)     exercise any of the remedies available to a secured party under the Oregon Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine; provided, however, that the expenses of retaking, holding, preparing for sale or the like as provided in the Uniform Commercial Code shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust;

(f)     deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, or otherwise exercise the power of sale granted herein, as a nonjudicial foreclosure of this Deed of Trust in the manner provided by applicable laws pertaining to the foreclosure of deeds of trust;

(g)     exercise all other rights and remedies provided in this Deed of Trust, in any Loan Document, or provided by law; and

(h)     impose the Default Rate.

Upon request of Beneficiary, Trustor shall assemble and make available to Beneficiary at the Land any of the Property which is not located there.

4.4     Foreclosure By Power of Sale.  Should Beneficiary elect to foreclose nonjudicially by exercise of the power of sale provided for in this Deed of Trust, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured by this Deed of Trust as Trustee may require.

(a)     Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as may then be required by law and by this Deed of Trust.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at

19

public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to the purchaser or purchasers its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness of such matters. Any person, including, without limitation, Beneficiary, may purchase at such sale and Trustor covenants to warrant and defend the title of such purchaser or purchasers.

(b)     After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including costs of evidence of title and attorneys' fees of Trustee or Beneficiary in connection with the sale, Trustee shall apply the proceeds of sale in such order as Beneficiary shall determine in its sole and absolute discretion, in accordance with applicable law, until satisfaction of all amounts owing under the Loan Documents with the remainder, if any, to be paid to the person or persons legally entitled to any such amounts.

(c)     Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of such sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

(d)     Trustor waives any right which it may have to direct the order in which any of the Property shall be sold in any sale made pursuant to the terms of this Deed of Trust.

4.5     Rescission of Notice of Default.  Beneficiary, from time to time before any Trustee's sale as provided above, may rescind any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which such notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale.  The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as provided above, other declarations or notices of default and demand for sale of the Property to satisfy the obligations of this Deed of Trust, nor otherwise affect any provision, covenant or condition of any Loan Document or any of the rights, obligations or remedies of Trustee or Beneficiary under this Deed of Trust or any such Loan Document.

4.6     Appointment of Receiver.  If an Event of Default shall have occurred and be continuing, Beneficiary, as a matter of right and without notice to Trustor or to anyone claiming under Trustor, and without regard to the then value of the Property or Trustor's interest in it, shall have the right to apply to any court having jurisdiction to appoint a receiver of the Property, and Trustor irrevocably consents to such appointment and waives notice of any application for any such receiver.  Any such receiver shall have all the usual powers and duties of a receiver in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 4.2 above, and shall continue as such and exercise all such powers until the date of confirmation of the sale of the Property, unless such receivership is sooner terminated.

20

4.7     Intentionally Omitted.

4.8     Intentionally Omitted.

4.9     Remedies Not Exclusive; Waiver.    Trustee and Beneficiary shall be entitled to enforce the payment and performance of any indebtedness or obligations secured by this Deed of Trust and to exercise all rights and powers under this Deed of Trust or under any other Loan Document or other agreement or any laws now or later in force, notwithstanding the fact that some or all of the indebtedness and obligations secured by this Deed of Trust may now or later be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise.   Neither the acceptance of this Deed of Trust nor its enforcement, whether by court action or pursuant to the power of sale or other powers, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security held by Trustee or Beneficiary.   Trustee and Beneficiary shall be entitled to enforce this Deed of Trust and any other security held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine.   No remedy conferred in this Deed of Trust upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other permitted remedy, but each shall be cumulative and shall be in addition to every other remedy permitted by law, contract or otherwise.   Every power or remedy given by any of the Loan Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary, and either of them may pursue inconsistent remedies.   By exercising or by failing to exercise any right, option or election under this Deed of Trust, Beneficiary shall not be deemed to have waived any provision of this Deed of Trust or to have released Trustor from any of the obligations secured by this Deed of Trust unless such waiver or release is in writing and signed by Beneficiary.   The waiver by Beneficiary of Trustor's failure to perform or observe any term, covenant, or condition referred to or contained in this Deed of Trust to be performed or observed by Trustor shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Trustor to perform or observe the same or any other such term, covenant or condition referred to or contained in this Deed of Trust, and no custom or practice which may develop between Trustor and Beneficiary shall be deemed a waiver of or any way affect the right of Beneficiary to insist upon the performance by Trustor of the obligations secured by this Deed of Trust in strict accordance with the terms of such obligations or of any Loan Document.

## ARTICLE V
## MISCELLANEOUS

5.1     Successors.   This Deed of Trust applies to, inures to the benefit of, and binds all parties and their successors and assigns.

5.2     Governing Law.   The provisions of this Deed of Trust shall be construed according to the laws of the State of Oregon.

5.3     Permitted Contests.   Trustor may contest or object in good faith to the amount or validity of any tax, assessment, claim, demand, levy, lien, encumbrance, charge or notice of noncompliance asserted by a third party (collectively, the "Claim"), the nonpayment or

21

nonperformance of which would be a default under this Deed of Trust, but only in accordance with the following conditions:

(a)     Trustor shall first give written notice to Administrative Agent and deposit with Administrative Agent a bond or cash satisfactory to Administrative Agent in such amounts as Administrative Agent shall reasonably require, up to 150% of the amount of any Claim or other sum in controversy, and, if the context of such Claim so requires, Trustor shall have provided such additional undertaking as may be required or permitted by law to accomplish a stay of any legal proceedings then pending in connection with any such Claim or controversy;

(b)     Trustor shall promptly and diligently proceed to cause such Claim to be settled and discharged in a manner not prejudicial to Beneficiary or its rights or security under this Deed of Trust;

(c)     if Trustor shall fail to discharge diligently any such Claim, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such Claim by promptly depositing in court a bond or the amount claimed or otherwise giving security for such Claim, or in such manner as is or may be prescribed by law;

(d)     Beneficiary may employ attorneys to protect its rights, and in the event of such employment, Trustor shall pay Beneficiary the reasonable attorneys' fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of any default by Trustor under this Deed of Trust; and

(e)     Trustor has demonstrated to Beneficiary's reasonable satisfaction that no portion of the Property will be sold to satisfy any such Claim prior to final resolution of such Claim or permitted contest.

5.4     <u>Severability</u>.  The invalidity of any provision of this Deed of Trust shall not affect the remaining portions of this Deed of Trust, and such remainder shall be construed as if the invalid provision had not been a part of this Deed of Trust.  If the lien of this Deed of Trust is invalid or unenforceable as to any part of the indebtedness secured by the this Deed of Trust, or if the lien is invalid or unenforceable as to any part of the Property, the unsecured or partially secured portion of such indebtedness shall be completely paid prior to the payment of the remaining and secured or partially secured portion of such indebtedness, and all payments made on such indebtedness, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of such indebtedness which is not secured or fully secured by the lien of this Deed of Trust.

5.5     <u>Notices</u>.  Any notice, demand or request required under this Deed of Trust shall be given in writing at the addresses set forth below by personal service; email; overnight courier; or registered or certified, first class mail, return receipt requested.

If to Trustor:

72ND AVENUE PROPERTY LLC

4804 NW Bethany Blvd., #I-2
Portland, Oregon 97229
Attention: Richard Cassinelli
Email: rec65@me.com

If to Beneficiary:

Parkview Financial REIT, LP
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025
Attention: Paul S. Rahimian
Email: Paul@ParkviewLoan.com

Parkview Financial 2020, LP
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90025
Attention: Paul S. Rahimian
Email: Paul@ParkviewLoan.com

With copy to:

Schwabe, Williamson & Wyatt PC
1211 SW 5th Ave, Suite 1900
Portland, OR 97204
Attention: Craig G. Russillo
Email: Crussillo@schwabe.com

Such addresses may be changed by notice to the other parties given in the same manner as required above. Any notice, demand or request shall be deemed received as follows: (i) if sent by email, at the time such personal service is effected or first attempted delivery if refused; (ii) if sent by email, upon the sender's receipt of confirmation of the receiving party's receipt thereof; (iii) if sent by overnight courier, at the time of actual delivery or first attempted delivery if refused; and (iv) if sent by mail, at the time of actual delivery or first attempted delivery if refused.

5.6     Indemnification Procedures.

(a)     If Beneficiary notifies Trustor of any claim or notice of the commencement of any action, administrative or legal proceeding or investigation as to which Trustor's obligation to indemnify under this Deed of Trust applies, Trustor shall assume on behalf of Beneficiary or other person to be indemnified (each, an "Indemnitee"), and conduct with due diligence and in good faith, the investigation and defense of, and the response to, such claim, action, proceeding or investigation, with counsel reasonably satisfactory to the Indemnitee; provided, however, that such Indemnitee shall have the right to be represented by advisory counsel of its own selection and at its own expense; and provided, further, that if any such claim, action, proceeding, or investigation involves both Trustor and an Indemnitee, and

23

such Indemnitee shall have reasonably concluded that there may be legal defenses available to it which are different from, additional to, or inconsistent with those available to Trustor, then the Indemnitee shall have the right to select separate counsel to participate in the investigation and defense of and response to such claim, action, proceeding or investigation on its own behalf at Trustor's expense.

(b)    If any claim, action, proceeding, or investigation arises as to which Trustor's duty to indemnify under this Deed of Trust applies, and Trustor fails to assume promptly (and in any event within ten days after being notified of the claim, action, proceeding, or investigation) the defense of an Indemnitee, then such Indemnitee may contest and settle the claim, action, proceeding, or investigation at Trustor's expense using counsel selected by such Indemnitee; provided, however, that after any such failure by Trustor no such contest need be made by such Indemnitee and settlement or full payment of any claim may be made by such Indemnitee without Trustor's consent and without releasing Trustor from any obligations to such Indemnitee under this Deed of Trust.

5.7    <u>Waiver of Remedies</u>.  By accepting payment of any amount after its due date, or an amount which is less than the amount then due, or performance of any obligation required after the date required for such performance, Beneficiary does not waive its rights either to require prompt payment or performance when due of all other amounts or obligations, or to declare a default for the failure so to pay or perform.

5.8    <u>Trustee's Powers</u>.  At any time, without liability for doing so and without notice, upon written request of Beneficiary and presentation of the original or certified copies of this Deed of Trust and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured by this Deed of Trust or the effect of this Deed of Trust upon the remainder of the Property, Trustee may (a) reconvey any part of the Property, (b) consent in writing to the making of any map or plat of the Property, (c) join in granting any easement on the Property, or (d) join in any extension agreement or any agreement subordinating the lien of this Deed of Trust.

5.9    <u>Substitution of Trustee</u>.  Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, substitute a successor or successors for the Trustee.

5.10    <u>Trust Irrevocable; No Offset</u>.  The trust created by this Deed of Trust is irrevocable by Trustor, but Trustee is required to reconvey the trust upon Beneficiary's request, including without limitation pursuant to Section 5.11 below.  No offset or claim that Grantor now or may in the future have against Beneficiary shall relieve Grantor from paying any amounts due under the Loan Documents.

5.11    <u>Corrections and Further Assurances</u>.    Trustor shall, upon request of Trustee, promptly correct any defect, error or omission which may be discovered in the contents of this Deed of Trust or in its execution or acknowledgment, and will execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Trustee to carry out more effectively the purposes of this Deed of Trust, to subject to the lien and security interest of this Deed of Trust any of Trustor's properties, rights

24

or interest covered or intended to be covered by this Deed of Trust, and to perfect and maintain such lien and security interest.

5.12 <u>Full Reconveyance</u>. Upon written request of Beneficiary stating that all sums secured by this Deed of Trust have been paid and upon surrender to Trustee of this Deed of Trust and the Note for cancellation and retention and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then subject to this Deed of Trust. The recitals in such reconveyance of any matters of facts shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

5.13 <u>Performance Under Other Documents</u>. Trustor shall faithfully perform each covenant to be performed by Trustor under any lien or encumbrance, lease, sublease, instrument, declaration, covenant, condition, restriction, license, order or other agreement which affects the Property, including, without limitation, each covenant to be performed by Trustor under any mortgages and any and all other instruments pertaining to such mortgages, including the respective obligations secured thereby. A breach of or a default under any such lien, encumbrance or other instrument which Beneficiary reasonably believes may be prior and superior to the lien or charge of this Deed of Trust shall, at Beneficiary's option, constitute an event of default under this Deed of Trust.

5.14 <u>Amendments</u>. Neither this Deed of Trust nor any of its terms can be waived, changed, discharged or terminated orally, except by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.15 <u>Acceptance by Trustee</u>. Trustee accepts the trust created by this Deed of Trust when it is made a public record as provided by law.

5.16 <u>Statute of Frauds</u>. UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY US (BENEFICIARY) CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY US (BENEFICIARY) TO BE ENFORCEABLE.

5.17 <u>Commercial Deed of Trust</u>. This Deed of Trust is a commercial trust deed and is not a residential trust deed, as the phrase "residential trust deed" is defined in ORS 86.705, and the provisions of ORS 86.705 through 86.815 applicable to the foreclosure of commercial trust deeds shall apply to this Deed of Trust at the option of Beneficiary.

5.18 <u>Forced Insurance</u>.

WARNING

UNLESS YOU (TRUSTOR) PROVIDE US (BENEFICIARY) WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE

MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

**TRUSTOR:**

72ND AVENUE PROPERTY LLC,
an Oregon limited liability company

By: _____
Name: Richard Cassinelli
Title: Manager

26

STATE OF OREGON )
) ss.
County of _Multnomah_ )

    This instrument was acknowledged before me this _16_ day of _February_, 2023, by Richard Cassinelli, Manager of 72nd Avenue Property LLC, an Oregon limited liability company, on behalf of the company.

_____
NOTARY PUBLIC FOR OREGON
My Commission Expires: _8-1-26_



OFFICIAL STAMP
WENDY ALICE GIEURIN
NOTARY PUBLIC - OREGON
COMMISSION NO. 1025766
MY COMMISSION EXPIRES AUGUST 01, 2026

Case 24-31211-pcm11    Doc 11    Filed 04/30/24

# EXHIBIT "A"

## Legal Description

Parcel 1, PARTITION PLAT NO. 2020-006, in the City of Tigard, County of Washington, and State of Oregon.

Case 24-31211-pcm11    Doc 11    Filed 04/30/24

Initials:

**72nd Avenue Property, LLC**

| | |
|---|---|
| Average Projected Monthly Revenue - During Stabilization | $75,000 |

| | (30 days) | (14 Days) |
|---|---|---|
| Estimated Monthly Expenses: | | |
| Real Estate Taxes - Actual Per Vertical Housing | $1,307 | $0 |
| Property Insurance | $875 | $875 |
| Combined Utilities (Water/Sewer, Internet, Power,Trash) | $6,000 | $3,000 |
| Maintenance/Repairs | $2,802 | $1,401 |
| Advertising | $1,750 | $875 |
| Adequate Protection Payment to Avatar | $5,000 | $0 |
| Reserves for Replacements | $700 | $350 |
| | | |
| Total Expenses | $18,434 | $6,501 |

| | |
|---|---|
| Est Average Net Operating Income (NOI) | $56,566 |

**Exhibit C - Page 1 of 1**